CASE 95—EQUITY—APRIL 29.

# McLin v. Calvert, &c.

### APPEAL FROM CALDWELL CIRCUIT COURT.

The charter of an insurance company provides that " the fund created for the benefit of the widow and children of a deceased member shall be paid to them," without fixing the proportion each shall take. *Held*— That the statutory rule as to the distribution of surplus personalty of an intestate shall obtain.

BUSH & PORTER FOR KENTUCKY MASONIC MUTUAL LIFE INSURANCE COMPANY.

1. The judgment is for too much.
2. The circuit court should have adjudged to Mrs. McLin one third of the money due from appellant. (Acts Gen. Assembly, 1867; Ky. Mas. Mut. Ins. Co. v. Miller, 13 Bush, 489; Same v. Kembrough MS. Op., 1878; Same v. Yates, MS. Op., 1879.)

F. W. DARBY FOR MRS. McLIN.

It is clear that the legislature never intended that the money due from the Kentucky Masonic Mutual Ins. Co. should be divided equally between the widow and children. The appellant is entitled to one third. (Sec. 3, Charter Mas. Mut. Ins Co., 1867; 13 Bush, 489; Mas. Ins. Co. v. Kembrough, MS. Op., 1874; Same v. Yates MS. Op., 1879.)

McLin v. Calvert, &c.

W. H. CALVERT FOR APPELLEE.

A fair construction of the charter of the Kentucky Masonic Mutual* In-
surance Company gives the money to the widow and children in equal
amounts. The language is, "to be paid for the benefit of the widow
and children." (Masonic Mut Ins. Co. v. Miller, 13 Bush, 489; Same
v. Kembrough, MS. Op., 1878.)

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

Counsel is mistaken when he says "the charter directs
that the proceeds of a life policy of a deceased member
shall be equally divided between his widow and children."
The language is, "that the fund created in section 10 for
the benefit of the widow and children of the deceased mem-
ber shall be paid to them," &c.; but in what proportion they
shall take the charter does not in terms declare. But in
Yates' case we held that, inasmuch as the charter provided
that the member might by will appropriate the fund for the
*equal* benefit of the widow and children, it was not to be
supposed that the legislature intended that if the member
made no will the fund was still to be equally divided between
the widow and children. If such was the intention, the
provision empowering the member to direct by will that the
fund should be appropriated for their benefit equally, is with-
out meaning. Hence we held, that if no will was made, the
legislature intended that the fund should not be distributed
equally, and the question arose as to the rule to be estab-
lished in view of this intention of the legislature.

We thought then, and think now, that in view of the
nature and object of life insurance, that the rule prescribed
by the statute for the distribution of the surplus personalty
of intestates should be adopted.

The great general purpose and design of life insurance is
to provide for the comfort of the objects of the affection and
bounty of the person effecting the insurance, after that per-

son's death.    And it is most natural and reasonable, as well. as just, that when the policy and charter fail to make complete provision for the distribution of the fund, the courts. should adopt the statutory rule for the distribution of the surplus personalty of intestates, and divide it as they would do if the money was the proceeds of a note or bond held by the decedent.

In Con. Life Ins. Co. v. Palmer (5 Life and Accident Cases, 37) the Supreme Court of Connecticut held, where one of the beneficiaries of a policy died during the life of the insured, leaving a child surviving, that the proceeds of the policy was so nearly allied to surplus personalty left by a. decedent, that it ought to be distributed under the statute regulating the distribution of such surplus, and held the child of the deceased beneficiary entitled to a share in the fund accordingly.

This seems to us to be not only just, but what a large part, if not all those who insure for the benefit of their families, would understand to be the effect of the contract made with the insurance company; and in laying down this. rule, we entertain little doubt that we are doing just what the insured would have directed to be done if the question had been propounded to him.

Wherefore, the judgment is reversed, and the cause remanded, with directions to render judgment in favor of the appellant for one third of the amount due on the policy.